Tyler Car and Lumber Company v. A. Wettermark and Sons.

No. 997.

1. **Assignment of Non-Negotiable Contract—Defenses Against Assignee.**

In an action by the assignee of a non-negotiable contract of sale, to recover the price of lumber sold to the defendant thereby, the same defenses for breach of the contract may be interposed as if the suit was brought by the assignor, the original party to the contract.

2. **Same—Set-off.**

Where, in such action, it appears by the terms of the contract that the seller had agreed to load the lumber on the cars, the defendant is entitled to set off

against the plaintiff's demand the amount of increased freight paid by the defendant because of the seller's failure to properly load the cars.

**3. Breach of Contract—Measure of Damages.**

For failure of the seller to deliver lumber within the time stipulated in the contract of sale, the measure of damages is the difference in its value at the time it was delivered, and at the time it should have been delivered.

APPEAL from Smith. Tried below before Hon. FELIX J. McCORD.

*Whitaker & Bonner,* for appellant.—1. Damages arising out of the breach of a contract with reference to the same subject matter, even if concurrent with the original agreement, may be pleaded in offset to a recovery on the original contract, and the question as to whether the concurrent agreement is verbal or written or admissible to change the original contract, is a question of evidence and not of pleading. Bishop on Contracts, sec. 246; Waul v. Hardie, 17 Texas, 553.

2. The instrument sued on being non-negotiable, is transferred subject to all the defenses that may be set up against the assignor, and such defenses are admissible, even against a bona fide holder for value. Rev. Stats., arts. 267-272; Boyd v. Tarrant, 14 Texas, 230; Tiedeman, Com. Paper, sec. 242.

3. In a suit for the recovery of the value of an article sold and delivered, the contract fixing the price to be paid, the measure of recovery is the price specified in the contract, with interest and costs of suit. Wharton, Contracts, secs. 966, 967.

*E. C. Branch, T. B. Butler* and *H. B. Marsh,* for appellees.—1. In the absence of circumstances showing that the goods have a special or peculiar value, or are intended for a particular purpose, the true measure of damages for the failure of a vendor to deliver goods at the time agreed by him, is the difference between the market value of the goods at the time they should have been delivered, and the contract price, with legal interest on the amount, the difference between the said two prices, from the time the delivery should have been made. Benjamin on Sales (4 Am. Ed.), sec. 870, and authorities cited in note a; 1 Sedgwick on Damages, (8 ed.), sec. 198.

PLEASANTS, ASSOCIATE JUSTICE.—The statement of the nature and result of this suit is, with the approval of appellees, thus given by appellant:

This suit was instituted by A. Wettermark & Son, as plaintiffs, against the Tyler Car & Lumber Company, as defendant, to recover of defendant the sum of $4223.64, alleged to be due and owing to plaintiffs by virtue of a contract of sale of certain lumber, made by and between said defendant and one W. V. Carraway, by the terms of which the said Tyler Car & Lumber Company agreed to pay $5 per thousand feet on 1,407,883 feet of lumber, aggregating the sum of $7039.41, as the advance payment on said contract, and in which the following language was used:

"I also [referring to Carraway] further agree to load said lumber'

on the cars, and ship the same, upon receipt of, and according to, the orders of said Tyler Car & Lumber Company; and, when so loaded and shipped, I am to receive from said Tyler Car & Lumber Company an additional sum of three ($3) dollars per thousand feet, payable with their acceptance of A. Wettermark & Son, Nacogdoches, Texas, due sixty days from the first of the month following shipment or shipments. I also further agree to guarantee the grade or quality of said lumber herein sold to be good, merchantable, sized mill-run timber." Which contract was signed by the said Carraway, and the terms of said sale accepted, and the amount of timber above set forth acknowledged to have been received by the defendant.

Plaintiffs allege that, relying upon the said contract and the obligations therein contained for the defendant to pay them the said sum of three dollars per thousand feet for the lumber purchased by it from said Carraway, they had an adjustment of their matters with the said Carraway, and in consideration of a release by them to him all their claims for indebtedness against him, the said Carraway turned over and assigned to plaintiff all his rights and claim against the said Tyler Car & Lumber Company, growing out of, incident to, or connected with the said contract of sale set forth in their said petition, to which the court is referred for a full copy of the alleged contract or bill of sale. They sue for the three dollars per thousand on the number of feet of lumber mentioned and specified in said bill of sale.

As a second count in their petition, they allege that the said Carraway did ship the said Tyler Car & Lumber Company, and said company did receive from him 1,080,035 feet of lumber, and thereby the defendant became liable under said contract to pay the sum of $3 per thousand feet upon said amount of lumber so received and shipped, and amounting in the aggregate to the sum of $3241.05.

Defendant answered by a general denial and by special pleas as follows:

1. That in the course of business, and prior to the execution of said contract of sale, the said Carraway had become indebted to defendant in the sum of $6127.87, and that in the purchase of said lumber defendant was to pay for same in a credit on its account, and to pay such further sum as was necessary to complete the contract; that on the first day of June, 1891, defendant, as a payment on said contract, gave its acceptance for the sum of $1529.67, payable ninety days after said date to said plaintiff; and, further, that in said contract of sale the said Carraway had agreed to guarantee the quality and grade of said lumber to be what is understood among lumbermen as 'No. 1 common and better.' That a large quantity of said timber did not come up to the grade guaranteed in said contract, but was inferior and worth much less upon the market, which said defects were unknown, and could not have been known, to the defendant at the time of the making of said contract.

2. That at the time of the purchase of said lumber, the same was piled in large stacks, and its accurate measurement was impracticable; that, as means of arriving at a basis upon which to make the advance pay-

ment, it inspected said lumber and estimated that there was about the amount mentioned on said bill of sale. That it was intended, when the lumber was shipped out and the exact amount ascertained, that the same should be paid for according to said accurate measurement. That said Carraway only delivered to defendant, and it only received from him, 1,080,035 feet of lumber, much of which was below the grade guaranteed by said Carraway; and defendant contended that it was only liable for the actual amount that was shipped to it, or its order, and that the amount paid in advance should be considered as a payment for the said lumber, and only the balance, if any, was entitled to be recovered by plaintiffs.

3.   That at the time of the purchase, the said Carraway, in order to effect and keep the same insured at reasonable rates, agreed that while the lumber remained in his yard he would maintain a certain clear space between said lumber and his mill. That he failed to carry out this part of his said contract, whereby the defendant was compelled to pay an additional sum of insurance, to-wit, $93.80, which it pleaded as an offset against plaintiff's demand.

4.   That the said Carraway promised and agreed in said contract, and as a part of the consideration for said lumber, to load said lumber on the railroad cars in a skillful manner, and on the order of this defendant, and as demanded by it. That he failed to load the timber in a careful and skillful manner, putting too much or too little on a car, whereby the freight charges were largely increased, and also failed to load the same within a reasonable time. That by reason of the fact that the cars were not properly loaded, said defendant lost on the price of said lumber the sum of $200, which it pleaded as an offset against plaintiff's demand; and that by reason of the failure of the said Carraway to load the same within a reasonable time, defendant lost the sale of it at its fair market price, whereby it was damaged in the further sum of $1000, which it pleaded as an offset against the demand of plaintiffs.

5.   That plaintiffs only acquired the rights of Carraway in said contract, and took the same with full knowledge of the acts and doings of the said Carraway. That they received the assignment of the said claim from Carraway on a pre-existing debt due and owing them by the said Carraway, and never in fact paid to Carraway anything of value for said assignment.

On the trial of the cause, the court sustained plaintiffs' exceptions to all that part of said answer setting up as an offset the account for additional insurance and damages for negligently loading the lumber. The matter being submitted to the jury under the charge of the court, they returned a verdict in favor of plaintiffs for the sum of $2613.31. The motion of defendant for a new trial having been overruled, the defendant gave notice of appeal, and has assigned the following errors.

The defendant requested the following charge: "Under the contract in evidence executed on the 4th day of June, 1891, between W. V.

Carraway and the defendant, for the purchase and sale of lumber, A. Wettermark & Son, the plaintiffs, acquired no greater rights than Carraway, the original maker of the contract, had, and the Tyler Car & Lumber Company is entitled to interpose the same defenses to the demand or claim of the plaintiffs, Wettermark & Son, arising out of said contract, as they could have interposed if· Carraway himself were bringing this suit. That is to say, for any breach or breaches of the said contract on the part of said W. V. Carraway, the Tyler Car & Lumber Company could interpose the same as a defense to the plaintiffs' demand." This charge should have been given; it correctly stated the law which should have governed the jury, while the charge of the court was misleading.

The appellant's sixth assignment of error is as follows: The court erred in refusing to give the second special charge asked by defendant, which reads as follows: "The defendant asks the court to charge the jury as follows: 'The defendant, the Tyler Car & Lumber Company, would only be liable for the amount of lumber received by and shipped to it by Carraway in accordance with the contract of sale of date June 4, 1891. And if you believe from the evidence that the amount stated in said contract was only approximately stated, and was subject to correction upon the loading and the shipping of the same, and that the quantity fell below the approximated amount; or if you believe that part of the said lumber was afterwards appropriated by Carraway without the consent of the defendant, so that in either event, whether by error in approximation, or by Carraway's appropriation of a part of it, the defendant only got, and Carraway only loaded and shipped for it, 1,080,-035 feet, the defendant would only be liable for that amount, and for such of that amount as came up to the grade and quality mentioned in the contract, it would only be liable at the contract price, and for such part as fell below that grade, and which defendant received, it would be liable for it at its reasonable value.'

" 'And if you further believe from the evidence that at the time of making the said contract of purchase, or afterwards, the defendant made advance payments on said lumber in accordance with said contract, under the belief or impression that it was getting, or would get, a larger quantity and better quality of lumber than it received, then defendant would be entitled to the sum paid as a credit for the amount and kind of lumber it did actually receive against the demand of the plaintiffs, Wettermark & Son.'

"The court charged the jury in accordance with the first paragraph of the above charge, and it is only to his action in refusing to give the last paragraph that the defendant complains."

This assignment must be sustained. The charge requested should have been given. The contention on part of appellees that they were parties to the contract sued on, or that they had any other rights under that contract than those of an assignee of a non-negotiable instrument, is erroneous, and the court erred in every other part of its charge which

assumes the law of the case to be otherwise. The cases invoked by
appellees, Spann v. Cochran, 63 Texas, 242, and McGowan v. Schrimp,
21 Texas, 22, in support of their contention, have no application to
the facts in this case. The appellant did not assume to pay the debt
of Carraway to the appellees or any part of that debt. It contracted
for the sale and delivery to it by Carraway of a certain quantity of lum-
ber of specific grade or quality, at an agreed price, and a certain pro-
portion of the price was to be paid by instruction of Carraway to ap-
pellees; and for breach of the contract by Carraway, appellants could
plead in defense to plaintiffs' demand.

The court did not err in sustaining plaintiffs' exception to that part
of defendant's answer which set up payment of additional insurance
as an offset against plaintiffs' suit.

But the court erred in sustaining appellees' fourth special excep-
tion to that portion of the appellant's answer which claimed damages
for the improper loading of the cars by Carraway. If the cars were not
loaded as one of ordinary prudence and possessed of sufficient skill in such
business would have loaded them, and, by reason thereof, appellant sus-
tained damage in the way of increased freight, it would be entitled to
recover, and the measure of damages would be the increase of freight,
which was the proximate result of such improper loading of the cars
with the lumber.

The seventh assignment of error is in these words: "The court erred
in refusing to give the third special charge asked by the defendant, which
reads as follows: 'The defendant asks the court to charge the jury as
follows: "If you believe from the evidence that the defendant in this
case, after the purchase of the lumber from Carraway, contracted to sell
the same or any part thereof at a profit, and that such sale failed or
fell through because of the failure of Carraway to load and ship the
said lumber as he agreed, and that thereby the defendant lost the said
profit, then the defendant would be entitled to such loss as an offset
against the plaintiffs' demand. Or, if you believe from the evidence,
that after the purchase of said lumber by defendant, the said Carraway
delayed its loading and shipping for an unreasonable length of time,
contrary to his compact, and during such delay the lumber market de-
clined and lumber depreciated, and thereby defendant lost the sale of
said lumber before said depreciation, that the defendant would be
entitled, as damages as an offset against plaintiffs' demand, to the dif-
ference between the price of the lumber, if it had been loaded and
shipped promptly, according to the contract, and its price when it was
actually loaded and shipped."

The court did not err in refusing to give the entire charge asked by
appellant, because a part of the instruction is erroneous in that it does
not give the proper rule for determining the measure of damages. If
the appellant sustained loss by the failure of Carraway to deliver the
lumber within the time stipulated for in the contract of sale, and such
failure was negligence on the part of Carraway, the defendant would

be entitled to recover his damages, and the measure of such damages would be the difference in the value of the timber at the time of its delivery and its value at the time when it should have been delivered to defendant, and to this effect the court should have instructed the jury. We deem it unnecessary to notice the other assignments of error.

For the errors we have pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 20, 1896.